## DE LOUIS *et al.* v. SAGE.

1. DECREE RE-AFFIRMED. The decree in *Sprott* v. *Reed*, 3 G. Greene, 489, re-affirmed.

2. HUSBAND AND WIFE. In 1841 a decree was rendered against E. H., a *feme sole*, who, in 1844, intermarried with one H. D. L., after which an execution was issued under the decree, and the real estate of defendant therein sold to satisfy the same. The property was purchased by one G. who immediately assigned the sheriff's certificate to H. D., L. the husband, to whom the sheriff's deed was subsequently issued. *Held*, That there was no legal incapacity in the husband to acquire this property in this manner; and that as there was no evidence of fraud or bad faith, a title acquired through the conveyance to him should be sustained.

*Appeal from Lee District Court.*

TUESDAY, APRIL 15.

ACTION OF RIGHT. Plaintiffs claim as the heirs of Elizabeth Hunt. Defendant relies upon a title derived under certain judgments and executions. Judgment for defendant, and plaintiffs appeal.

*Curtis, Gilmore & Curtis*, for the appellant, relied upon the following authorities: *Ex parte Peru Iron Company*, 7 Cow., 540; *Van Rensselaer* v. *The Sheriff of Albany*, 1 Id., 501; *Vaughn* v. *Eley*, 4 Barb., 159; *Van Rensselaer* v. *The Sheriff of Onondaga*, 1 Cow., 443; *Everston* v. *Sawyer*, 2

---

[1] A petition for a rehearing of this cause was overruled by the court.— REPORTER.

De Louis v. Sage.

Wend., 407; *Hoghton* v. *Hoghton*, 11 Eng. L. & E., · 134; *Cooke* v. *Lamotte*, Id., 26; *Ahearne* v. *Hogan*, 1 Dru., 310; *Espey* v. *Lake*, 15 L. & E., 579; *Buffaloe* v. *Buffaloe*, 2 Dev. & Bat., 241; *Taylor* v. *Taylor*, 8 How. U. S., 183; *Greenfield's Estate*, 14 Penn., 504; *Jenkins* v. *Pye*, 12 Pet., 249; *Keech* v. *Sanford*, 1 E. C. L., 53; *Broadstreet* v. *Platt*, 17 Wend., 44; *Sullivan* v. *McLenans*, 2 Iowa, 442; *McCrory* v. *Foster*, 1 Id., 271; *Green* v. *Winter*, 1 John. Ch., 27; *Winfrey* v. *Williams' Executors*, 5 B. Monroe, 435; Blackwell on Tax Titles, 470; *Piatt* v. *St. Clair's Heirs et al.*, 6 Ohio, 227; 11 Ill., 322; 1 Aiken, 306; 14 Verm., 532; *Varney* v. *Stephens*, 22 Mo., 331.

*Samuel F. Miller* and *McCrary & Bruce* for the appellee, cited *Sprott* v. *Reed*, 3 G. Greene, 489; *Jackson* v. *Duncan*, 16 John., 110; *Todd's Heirs* v. *Wickliffe*, 18 B. Monr., 906; 2 Comyn's Dig., 206, Baron and Feme, E; 1 Bac. Abr., I, 496, (marg.) 8 Watts & S., 409; 4 Rich. Eq. (S. C.), 301; 10 Id., 130; *Sheriff of Fayette* v. *Buckner*, 1 Litt. Ky., 126; 16 Penn., 417, 365; 18 Id., 392; 5 Gratt., 63; 2 Kent Com., 138.

WRIGHT, J.— Elizabeth Hunt, under whom both parties to this controversy claim, was one of the parties to the "decree of partition of the lands of the half-bred Sac and Fox Indians," and by that had set off to her the property in dispute. This was in 1841. On the 6th of August, 1844, she intermarried with Henry De Louis. In November, 1844, an execution issued on this decree against Elizabeth Hunt, for costs, and in January, 1845, the property was sold by the sheriff to Isaac Galland. The sale was for more than sufficient to satisfy the execution, and the excess was paid to the husband, De Louis, "for Elizabeth Hunt," as appears by his receipt on the writ. On the same day, Galland transferred the certificate of sale to De Louis, and authorized the officer to make him the deed when the

time for redemption should expire. The deed was accordingly made to De Louis, in April, 1846. After this, Ainsworth and others recovered judgment against De Louis, and thereunder sold the property to Reeves, who conveyed to Wolcott, who conveyed to defendant.

Several points are raised and discussed by appellant's counsel, touching the decree of partition, the execution thereon, and the validity of defendant's title, so far as it depends upon that proceeding. The very same questions however, were raised, discussed, and fully examined in the case of *Reed* v. *Sprott,* 3 G. Greene, 489, and all decided against the position now taken by appellants. That decision was made in 1852. Under it titles have been acquired and upon it parties interested have securely rested for several years, and we are not disposed, except for the most cogent reasons, to overrule it. We see nothing in the argument of appellant to shake our confidence in the correctness of that case, and thus far, therefore, his exceptions are overruled. And see *Johnson* v. *Carson,* Id., 499.

But the pivotal point, and that upon which appellants principally rely, is, that De Louis, at the time of the purchase and assignment by Galland, was the husband of Elizabeth, the execution defendant, and could not thus acquire title to the lands of his wife. Under this general proposition, it is argued that Galland, by his purchase obtained merely a *lien* on the realty, that the purchase by De Louis was an extinguishment of this lien, as fully as if the wife had redeemed, that the husband was answerable for the debts of the wife, that De Louis took no title, and the purchaser under the execution against him took none, that if his title were voidable, merely, and not void, that defendant had actual notice from the record of all the facts vitiating it, that he occupied a position of trust, or one fiduciary in its character, and if he bought in the incumbrance such purchase inured to his beneficiary, and

finally, that at the time Reeves purchased, the husband was tenant by courtesy, having no other title, which terminated at his death, the appellants having the fee as the heirs of their mother.

The truth of some of these positions might be admitted, and the main proposition be unestablished. Thus if it be true that Galland had but a *lien* by his purchase, yet if there was no redemption, the lien would ripen into a title, and the property become vested in the purchaser, or his vendee. So, though the husband by the marriage might become liable for the debts of the wife, yet if he does not pay them, but acquires, in bad faith, even, a title to her property, such liability would not invalidate a title derived from him, in the hands of an innocent holder. But passing these matters, we come to the consideration of the material points involved in this controversy.

This is an action of right, in which the legal title must prevail. And defendant has this title, unless there was a legal incapacity on the part of the husband to receive it in the manner disclosed in the record. How then did he receive it? The answer is, that by certain legal proceedings the title of the wife was vested in the husband. At law, does the fact that the wife formerly held the title, invalidate that which the husband thus takes? Clearly not, for there never was any rule which prevented the husband, by proper conveyance, from holding the real property which the wife had in her own right. Of course, we speak of cases where there is good faith, or the absence of fraud. The obstacle that existed at common law was the manner of passing the title, or effectuating the intention of the parties, and did not relate to the ability of the husband to acquire and hold the property. If the rule that she was unable to contract with the husband was not violated, the husband could purchase the same, as any other person. A fine and recovery was effectual to con-

vey the wife's separate estate, and was used at times to vest it in the husband.   So the wife might join her husband in making a conveyance to a third person, and their grantee convey to the husband, and thus the husband acquire a title, divested of all title originally held by her. (*Jackson* v. *Stephens*, 10 John., 110.)   And if by valid legal proceedings he obtains this title, it will be upheld.

Suppose that Galland, in this case, had taken the sheriff's deed, and afterwards, for a valuable consideration, had conveyed to the husband, could there be any question that he would take the estate, just as if the wife never had owned it ?   Her title was divested by the sale and the failure to redeem; his purchase inured to his own benefit, and the property would be liable to the payment of his debts.   And in what is the case different, when he purchases the certificate and takes the sheriff's deed ?   True, if there was fraud, the wife would have . her action to reclaim .her property ; and if this fraud was brought home to third persons, they might be affected by it.   And in that event, even, the legal title would be in the husband.

Does the fact of his liability to pay her debts, aid appellants ?   Who is he liable to, and who can compel him to discharge this duty ?   The creditor, and not the wife.   Suppose her own property, then, is sold to pay her ante-nuptial debt; is the husband legally bound to redeem that property, and if, instead of doing so, he purchases it of the sheriff's vendee, is the title thereby rendered invalid in the hands of those who hold in good faith under the husband?   There may be a moral obligation resting upon him to make the redemption, but none of such a legal nature as to vitiate a title that he may take to property which neither redeemed.

It only remains for us to add, that we see no such evidence of fraud in this case as to justify us in holding this title invalid in the hands of defendant.   Whatever may have been the husband's motive in the transaction, however,

corruptly or fraudulently he may have acted, knowledge thereof is not brought home to Reeves, nor those holding under him. The judgment is

Affirmed.